# IN THE COURT OF APPEALS OF IOWA

No. 23-0787
Filed August 7, 2024

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**RAYMOND DUKE BIRDEN,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

　　A defendant appeals the denial of his motion for new trial. **AFFIRMED.**

　　Daniel A. Dlouhy of Dlouhy Law, P.C., East Dubuque, Illinois, for appellant.

　　Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

　　Considered by Tabor, P.J., and Badding and Buller, JJ.

**TABOR, Presiding Judge.**

This appeal follows a remand for the district court to apply the correct standard to Raymond Birden's motion for new trial. *See State v. Birden*, No. 21-0890, 2023 WL 1812845, at *9–10 (Iowa Ct. App. Feb. 8, 2023) (finding court mistakenly deferred to jury's credibility determination). On remand, the court denied Birden's motion using the weight-of-the-evidence standard. But Birden claims the court paid "little more than lip service" to the credibility issues of two State's witnesses. He asks us to grant a new trial or, in the alternative, remand for the district court to have a third shot at applying the proper standard.

Birden also challenges the court's denial of his request to continue the remand hearing so he could "retain or otherwise determine" if his appellate counsel—rather than his trial attorneys—could represent him. He asks for new counsel should we again remand the motion for new trial.

Because the district court applied the new-trial test from *State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998), a second remand is unnecessary. And because the court did not abuse its discretion in denying the motion, we decline to order a new trial. We also find no abuse of discretion in the court's refusal to continue the remand hearing for Birden to secure different counsel.

## I.      Facts and Prior Proceedings

A jury convicted Birden of first-degree murder in the shooting death of Shavondes Martin. Jurors heard evidence that the victim was shot nine times with two types of ammunition and left for dead in a Waterloo alley in May 2018. Neighbors found Shavondes's body near the home of his cousin, Danaesha

Martin.[1]    In closing argument, the prosecutor described the killing: "It was an execution and it was personal."

Several weeks before his death, Shavondes communicated with Birden through social media and text messages.  The two had a bitter history stemming from an earlier murder.  In 2016, Octavious Brown—who Birden called his brother—was shot and killed.  Shavondes was one of four people charged with Brown's murder.  But he was acquitted in February 2018.  Shavondes's acquittal sparked a flurry of hostile exchanges with Birden in early May.

Those clashes were followed by three weeks of silence—but silence like the surface of a hot griddle waiting for grease.  The sizzle came when Shavondes sent Birden an audio clip that investigators called "a dis track where one side is disrespecting the other side."  In response, Birden texted Shavondes, complaining that he was hiding and a few hours later issued a dare: "Pop out pussy."  The two continued to trade barbs, with Shavondes threatening, "all that dissin gone get you a spot by yo brother," to which Birden replied: "I Bet Yu Meet Him Before I Do."

To flush out Shavondes, Birden contacted Danaesha, who was not only Shavondes's cousin but had dated Birden four years earlier.  On May 30, Birden messaged Danaesha asking if she wanted to "get high."  She agreed and was picked up by Birden and two other friends (Shaquan Coffer and Coffer's girlfriend, Hanna Widdel) in a Jeep Cherokee.[2]  They drove around Waterloo drinking and

---

[1] Because Shavondes and Danaesha share the surname Martin, we will used their first names in our opinion.

[2] Danaesha recalled both Birden and Coffer being armed.  Birden had a "police officer gun" (meaning a pistol), and Coffer had a "cowboy gun" (meaning a revolver).

smoking marijuana. Eventually they picked up Coffer's brother, Dequndes Glasper, who brought more alcohol into the Jeep. In fact, Glasper later passed out from all the drinking.

Meanwhile, using Danaesha's phone, Birden contacted Shavondes and learned his location. Then Birden's group dropped Widdel off at her home and picked up another acquaintance. After that, the group split up between the Jeep and a Mitsubishi that Danaesha had rented.

According to Glasper's version, Birden, Coffer, and their acquaintance loaded into the Mitsubishi. Glasper and Danaesha stayed in the Jeep, which she drove to pick up Shavondes. Shavondes climbed into the front seat with his cousin, and Glasper moved to the back seat. Glasper later recalled Danaesha driving around—speeding, swerving, and hitting the brakes erratically—and at one point stopping the Jeep and disappearing between two garages. When Danaesha returned she drove to her house, telling Shavondes and Glasper that she had to "pee." As they waited for her to return, Glasper moved to the driver's seat, and Shavondes took his spot in the back. Because Danaesha "was taking too long" inside, Glasper believed that Shavondes was getting nervous and irritated.

As they were passing time in the Jeep, Glasper heard a voice say: "Yeah, bitch ass n****. We got you." Glasper told police that it was Birden's voice but he did not see his face. Shavondes reacted by shaking his head and responding: "Damn, y'all got me; y'all got me." But then, in the rearview mirror, Glasper saw a black "police gun" pointed through the rear passenger window. And Glasper recalled hearing Birden list people that Shavondes wronged—including Brown.

Danaesha told a slightly different version of events. She claimed to have driven the Mitsubishi toward Shavondes's location, before she returned to the Jeep. She also testified that it was Coffer and another individual—not Birden— who came to Shavondes's window with a gun. She recalled that Coffer took her out of the Jeep to the Mitsubishi, where Birden was in the passenger's seat. Birden then entered the Jeep, which sped off. Danaesha described the Jeep's occupants: "the unknown male was driving . . . Shavondes was in the passenger seat, Birden was in the rear passenger, and [Glasper] was in the rear driver's seat." She said that as she and Coffer drove around in the Mitsibushi, she "heard a single shot." According to Danaesha, when she and Coffer reconnected with Birden, neither Glasper nor Shavondes were with him. After the shooting, Birden, Coffer, and Danaesha drove to Cedar Rapids. During that drive, she overheard Birden tell Coffer that Shavondes said: "'ah-hah, you got me' or something like that."

As part of the murder investigation, Victor Murillo, the State's firearms expert, examined the fired bullets and casings found in the alley, as well as those removed from the victim's body. Murillo determined that Shavondes was shot with two guns: a pistol and a revolver.

The State charged Birden with murder in the first degree. At the trial, he was represented by state public defenders Steven Drahozal and Les Blair. A jury convicted Birden as charged.

On appeal, the state public defender was appointed to represent Birden, but withdrew when private counsel Robert Montgomery entered his appearance. On Birden's behalf, Montgomery raised two issues. *See Birden,* 2023 WL 1812845, at *1. First, he claimed that the court erred by not asking the jury to decide whether

Glasper was an accomplice whose incriminating testimony required corroboration. *Id.* at *7. Second, he argued that the court failed to independently evaluate the credibility of the witnesses in deciding his motion for a new trial. *Id.* at *9. We rejected Birden's first claim but agreed with his second argument. *Id.* In our February 2023 decision, we conditionally affirmed his conviction but vacated the ruling on the motion for new trial and remanded for application of the correct standard. *Id.* at *10. Montgomery unsuccessfully sought further review.

Procedendo issued on April 4 and eight days later, the district court set the remand hearing for May 1, providing a copy of its order to the public defender. It does not appear that Montgomery received a copy of that order. Montgomery never withdrew from the appellate case file.

At the remand hearing, Birden was again represented by Drahozal and Blair. They moved for a continuance because Birden wanted to check if Montgomery could represent him at the remand hearing. The court denied the motion to continue, reasoning:

> Mr. Montgomery has not filed an appearance in this case. He has not indicated that he intends to represent Mr. Birden. This matter has been set—obviously we knew that the opinion was coming down and that the hearing would be set now for almost a month, and there's been nothing where Mr. Montgomery has filed any sort of appearance. So for that reason, the motion to continue is denied.

Birden told the court that he did not "feel comfortable moving forward." He said he needed time to "get ahold of Robert."

The court told Birden that Montgomery would have had notice of the appeals ruling at the same time as the other attorneys. The court also explained the limited purpose of the hearing: "it's simply because the court of appeals saw

some discrepancy in the standard I used." She assured him that Drahozal and Blair were "the two who are certainly versed on what happened at the trial, so we are going to go forward today with that motion for new trial."

Birden interrupted, asking "you're making me move forward with this same motion that you already denied once before?" He continued: "[O]bviously . . . you didn't see merit in his motion." Birden then asked for "a new lawyer to put in a new motion off of [his] transcripts, off of what's in the record." The court offered Birden time to speak to Drahozal and Blair in private, but he rebuffed the offer: "I don't wanna talk to them. I'm firing them for this motion. I'll represent myself pro se."

The prosecutor then piped in: "Quite frankly, Your Honor, in reading the court of appeals decision, quite frankly, we wouldn't—the court doesn't even need to provide us with argument at this point based on the ruling. You could fill this room with defense attorneys; it doesn't change what this hearing is."

Although Birden still insisted he did not want attorneys Drahozal and Blair to say anything on his behalf, the court recessed the proceedings for five minutes so that they could conference. When the parties went back on the record, attorney Drahozal argued for Birden to receive a new trial:

> I think Mr. Birden is still not necessarily comfortable with Mr. Blair and myself, but he does understand the court of appeals' ruling and that the single issue before the court is the standard. We do ask that the court weigh the credibility of the witnesses based on the court's own observations from trial, employ the weight of the evidence standard. And based on that, we do ask that the court grant the motion for new trial for Mr. Birden.

The court denied the motion for new trial, finding "the more credible evidence supports the jury's verdict." Birden again appeals.

## II.      Analysis

In this remand appeal, Birden raises two claims.  First, he contends the district court again improperly applied the *Ellis* standard in denying his motion for new trial.  Second, he argues the court erred in denying his motion to continue the remand hearing so that he could "seek out counsel of his own choosing"— specifically attorney Montgomery.  We will address each claim in turn.

### A.      Motion for New Trial

In deciding motions for new trial asserting the verdict is contrary to the evidence, district courts use a weight-of-the-evidence test.  *State v. Shorter*, 893 N.W.2d 65, 70 (Iowa 2017).  "This test is more searching than the sufficiency-of-the-evidence test, involves questions of credibility, and requires the district court to determine whether more credible evidence supports one side or the other."  *Id.* But to protect the jury's role as "the principal trier of the facts," district courts must "exercise this discretion carefully and sparingly."  *Ellis*, 578 N.W.2d at 659.  District courts must not disturb the verdict "where the evidence they considered is nearly balanced or is such that different minds could fairly arrive at different conclusions." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006).  Once the district court has correctly applied the test, we review its ruling for an abuse of discretion.  *See Shorter*, 893 N.W.2d at 71.  We review only the district court's exercise of discretion, not "the underlying question of whether the verdict is against the weight of the evidence."  *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

Birden claims that at the remand hearing, the district court repeated the mistake it made the first time.  In his words, "it appears that once again, little more than lip service and no real review of the actual record of the trial was performed

to determine whether [Birden's] claim of credibility issues with Danaesha Martin and Dequndes Glasper were indeed valid." We disagree with that assessment.

The district court noted that it listened to all the testimony and incorporated its first ruling on that point. Here's what the court said about the evidence in that first ruling:

> Starting first, obviously, with the motive and the reason behind it, including in there that even though Ms. Martin seemed to want to distance herself, she admitted that she was the one who set up Shavondes Martin for this meeting, that she was aware that he was going to be killed. There's the evidence that includes the Facebook and phone messaging. There is the evidence that Mr. Glasper says they were sitting outside and two men walked up and he believed the voice to be that of Mr. Birden and that then those two individuals took Mr. Birden down the alleyway and he was shot multiple times. The fact that then you have Mr. Birden, Mr. Coffer and Danaesha Martin going to Cedar Rapids and driving around and getting out of town and their activity down there.

The court picked up that the motive theme in its second ruling:

> [T]he allegation was that it was for retaliation. The court looked at that motive. The court looked at the Facebook messages which certainly supported not only the motive but the testimony of Ms. Martin, the testimony of Mr. Glasper, the admissions through that Facebook message made by Mr. Birden. The court did find and does find Mr. Glasper to be credible. Not only was he credible, but his testimony was supported by other evidence that the court found to be credible.

The court then clarified that it had questioned some of Danaesha's testimony, though not all of it. *See Shanahan*, 712 N.W.2d at 135 (reiterating that factfinders are free to accept or reject any part of a witness's testimony). The court found her credible when she admitted setting up the victim but doubted her efforts to distance herself from the shooting. After weighing the credibility of the witnesses, the court again denied Birden's motion for new trial.

On remand, the court made its own credibility determination of the State's witnesses based on its familiarity with the record. It properly exercised its discretion in finding that the verdict was not contrary to the weight of the evidence. *See Reeves*, 670 N.W.2d at 203. Neither a new trial nor another remand is necessary here.

## B. Motion to Continue Remand Hearing

As his second claim, Birden challenges the district court's denial of his motion to continue the remand hearing. He contends that denial prevented him from "attempting to retain or otherwise determine if Mr. Montgomery would be willing to represent [him]." He frames the issue as an infringement of his right to counsel of choice as guaranteed by the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution.

Given that constitutional framing, Birden contends our review is de novo. *See State v. Vanover*, 559 N.W.2d 618, 627 (Iowa 1997). The State agrees that de novo review would be proper for any denial of his right to counsel of choice. But it argues that the "narrower question" of the court's denial of the motion to continue for the substitution of counsel is reviewed for an abuse of discretion. *See State v. Sallis*, 981 N.W.2d 336, 351 (Iowa 2022). Because we find the analysis in *Sallis* most instructive on the question before us, we review the court's ruling for an abuse of discretion. *Id.*

Before reaching the merits of Birden's claim, we consider the State's argument that Birden waived his counsel-of-choice challenge by agreeing to allow attorneys Drahozal and Blair to continue to represent him at the remand hearing. We find that waiver argument unconvincing. Birden asked the public defenders to

move for a continuance, they did so, and the court denied it. Those actions "sufficiently alerted the trial court of a problem for us to consider the issue." *State v. Tejeda*, 677 N.W.2d 744, 749 (Iowa 2004) ("It would be unrealistic to expect much more from a defendant not trained in the law."). Once the district court denied the motion to continue, Birden had little choice but to continue with the hearing represented by his trial attorneys or represent himself. *Cf. State v. Dugar*, 354 So. 3d 881, 887 (La. App. 3d Cir. 2023) (deciding that, in challenge to denial of right to self-representation, lay defendant "could logically have concluded that any reassertion of his right . . . would be fruitless").

Finding no waiver, we turn to the merits. Birden is correct that both the federal and state constitutions afford a right to counsel of choice—so long as that counsel is not being paid by taxpayers. *Sallis*, 981 N.W.2d at 346. Even indigent defendants have the right to their choice of attorneys if they can "obtain private counsel without public expense." *Id.* at 347 (quoting *English v. Missildine*, 311 N.W.2d 292, 294 (Iowa 1981)).

The State contends that the record is unclear whether Birden intended to hire Montgomery to continue as his lawyer after the appeal or whether he was asking the court to appoint him as substitute counsel for Drahozal and Blair at the remand hearing. We see nothing in the trial record suggesting that Birden was urging the court to appoint Montgomery to represent him at state expense.[3] Instead, Birden asserted that "funds have been moved around . . . so he can

---

[3] Birden's appellate argument is less clear; at the end of his brief, he asks for the chance to determine whether Montgomery was able to represent him "whether by private retainer or court-appointment."

represent me on this." From our reading of the record—though Birden continued to be indigent—he retained Montgomery to handle his appeal and wished to retain him for the remand hearing.

But Birden did not have an unlimited right to do so. "A defendant's right to choose particular counsel is circumscribed by trial court discretion, which may be exercised to effectuate an orderly disposition of the case." *State v. Williams*, 285 N.W.2d 248, 254 (Iowa 1979). The district court believed that denying the continuance preserved an orderly post-trial process. Although less than a month elapsed between procedendo and the remand hearing, Montgomery knew when he sought further review that if the supreme court did not accept the case, our decision would require a return to the district court. Yet, as the district court noted, Montgomery did not enter an appearance after procedendo issued. The court also emphasized that the public defenders were prepared to argue the motion because they knew the credibility issues backwards and forwards from representing Birden at his trial. We cannot say the court would have abused its discretion in granting a continuance. But given the limited information on whether Montogomery was available or willing to represent Birden on remand, the limited nature of the remand, and the interest in an "orderly disposition of the case," the court had legitimate reasons for denying Birden's motion to continue the remand hearing so that he could explore the possibility of other representation. *Id.* "[T]he district court acted within its discretion to manage the proceeding[]." *Sallis*, 981 N.W.2d at 351.

**AFFIRMED.**